UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOUGLAS R. McCARROLL,      :
     PLAINTIFF,        :
                           :
v.                              :      CIVIL ACTION NO.
                           :      3:11-cv-934 (VLB)
U.S. FEDERAL BUREAU OF PRISONS,  :
ET AL                       :
     DEFENDANTS.          :      SEPTEMBER 10, 2012

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTIONS TO DISMISS [DKT. ##34,40,44,48]

Before the Court are four motions to dismiss the Plaintiff's complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by the Defendants Bureau of Prisons ("BOP") and BOP employees Crystal Kindall[1], Deborah Schult, Barbara Darrah, Steven Lucas, Matthew Ellis,  and Judy Nichols (collectively referred to herein as the "BOP Defendants"); Community Solutions, Inc.  ("Community Solutions") and Community Solutions employee Elaine Cohen (collectively referred to herein as the "Community Solutions Defendants"); Atlanta Psychological Associates[2] ("APA") and APA employee Marvin Douglass (collectively referred to herein as the "APA Defendants").  The Plaintiff, Douglas R. McCarroll ("McCarroll"), proceeding *pro se*, brought this *Bivens* suit alleging violations of his First, Sixth, Fourth, Fifth, and Eighth amendment rights,  In addition, Plaintiff asserts several state law causes of action such as breach of

---

[1] The Plaintiff misspelled Defendant Kindall's last name in the complaint.  The Court will use the correct spelling in its decision.  See [Dkt. #35, p. 1 n.1].
[2] The Plaintiff misspelled Atlanta Psychological Associates's name in the complaint.  The Court will use the correct spelling in its decision.  See [Dkt. #41, p. 1 n.1].

contract, fraud, and intentional and negligent infliction of emotional distress.  The Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata* and in the alternative that the Plaintiff has failed to state a claim among other arguments.  For the foregoing reasons, the Court grants Defendants' motions to dismiss.

Background

On August 19, 1996, Plaintiff was sentenced in the United States District Court for the District of Connecticut to a 15-year term of imprisonment followed by an eight-year term of supervised release.  [Dkt. #35, BOP Motion to Dismiss, p. 4].  Plaintiff was released from BOP custody on December 5, 2008.  *Id.*

i.    2009 NDNY Action

On February 13, 2009, the Plaintiff, proceeding *pro se*, filed a *Bivens* action in the Northern District of New York alleging violations of his First, Sixth, Fourth, Fifth, and Eighth amendment rights as well as several state law causes of action for fraud and intentional and negligent infliction of emotional distress against many of the same Defendants as the instant action.  See 9:09-cv-187 (NAM/GJD) (referred to herein as the "NDNY Action").   In the NDNY Action, the Plaintiff named the BOP and BOP employees Crystal Kindall, Deborah Schult, and Steven Lucas as defendants.   Plaintiff also named Community Solutions's employee Elaine Cohen as a defendant in the NDNY Action

In the NDNY Action, Plaintiff's causes of action were predicated on his allegations that the BOP coerced him into agreeing to participate and sign up for a Halfway House Program.  *See* [Dkt. #36, Ex. C, NDNY Action Complaint].

Plaintiff alleged that he did not want to participate in the program because he did not have an alcohol or drug abuse problem, but was told by Defendant Lucas that it was a voluntary program.  Plaintiff alleged that when he entered the Watkinson Halfway House on June 4, 2008 he was told by Defendant Kindall that the drug abuse program was mandatory and that he was required to attend. *Id.* at ¶¶7-13. Plaintiff then alleges he attended a scheduled interview at Atlanta Psychological Associates with Dr. Marvin Douglass who rejected Plaintiff from the program.  *Id.* at ¶¶14-15.  Plaintiff alleged that he received an "Incident Report (Shot)" from Watkinson House Staff on June 10, 2008 charging him with a "PAC violation 309, Violating a Condition of a Community Program" in connection with his refusal to participate in the drug abuse program.  *Id.* at ¶17.  Plaintiff alleged that he was informed by Defendant Cohen, the director of the Watkinson halfway house, that a UDC hearing was to take place and that on June 16, 2008, he was "removed in leg irons and chains by two United States Marshal and carted off and dumped in the Hartford Community Corrections jail."  *Id.* at ¶20.  Plaintiff alleged that sometime in July 2008 an "in absentia disciplinary hearing was held and he was found guilty of a "PAC violation 309."  *Id.* at ¶26.  Plaintiff alleged that a series of improprieties and wrongs occurred in connection with the disciplinary process regarding the "PAC violation 309."  *Id.* at ¶¶26-71.

Plaintiff alleged in his complaint that the Defendants conspired and deprived him of his rights to "A) Freedom from cruel and unusual punishment; B) freedom from terror, humiliation and fear; C) Freedom from retaliation for exercising First and Sixth Amendment Rights [for helping other prisoners];

D)Freedom from intentional and/or negligent infliction of emotional distress and/or great emotional distress; E) Freedom from fraudulent use of taxpayer dollars; F) Freedom from negligence in the performance of police duty; G) Due Process of law; H) Equal protection of the Laws." *Id.* at ¶71.

Defendant Cohen moved to dismiss the NDNY Action for failure to state a claim and on the basis that the NDNY lacked personal jurisdiction over her.  On March 25, 2010, the NDNY court granted Defendant Cohen's motion to dismiss concluding that Plaintiff had pled only vague conclusory allegations and had therefore "failed to demonstrate an agreement or concerted action to violate a federally protected right." *See* [Dkt. #36, Ex. B, NDNY Order).  The NDNY court also found that the Plaintiff failed to make a prima facie showing of conspiracy to warrant an inference that Cohen was a member of the conspiracy for personal jurisdiction to extend to her based on acts that were allegedly committed by her co-conspirators.  *Id.* at 13-14.  The NDNY court dismissed the complaint as against Defendant Cohen without prejudice to repleading in deference to Plaintiff's *pro se* status within 30 days of the court's order.  *Id.*  The Plaintiff failed to file an amended complaint.  *Id.*

The BOP Defendants moved for summary judgment on the basis that Plaintiff's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), that the complaint failed to state a claim, and that the defendants were entitled to qualified immunity.  *Id.* at 15-16.  On March 25, 2010, the NDNY court concluded that under *Heck* Plaintiff could maintain a due process challenge if he waived all potential claims with respect to the duration of his confinement that arise out of the

proceeding he is attacking in the current action.   The NDNY court determined that it must present this waiver option to Plaintiff and ascertain whether he is willing to waive all claims relating to sanctions affecting the duration of his imprisonment in order to proceed with his claims affecting his conditions of confinement.  *Id.* at 19-20.  The NDNY court therefore took no position on the merits of Plaintiff's remaining claims and held the BOP Defendants' motion for summary judgment in abeyance pending Plaintiff's decision on waiver.  *Id.*  The NDNY court ordered Plaintiff to inform the court if he chooses to waive his present and future due process claims challenging the loss of good time credits arising from the disciplinary hearings conducted by the defendants within 30 days of the court's order.  *Id.*

On May 7, 2010, the NDNY court dismissed Plaintiff's complaint for failure to comply with the court's order to file a waiver statement.  [Dkt. #26, Ex. B].  The NDNY court deemed the Plaintiff to have refused to waive his claims and as a consequence concluded that his claims were barred by *Heck* as Plaintiff is subject to supervisory release until 2016.

ii.    **Current Action**

On June 10, 2011, the Plaintiff filed the instant action in the District of Connecticut.  *See* [Dkt. #1, Compl.].  The Plaintiff named three new BOP employees Barbara Darrah, Matthew Ellis and Judy Nichols as Defendants in the instant action who were not parties to the NDNY Action.  In addition, Plaintiff also named Community Solutions, APA, and APA employee Marvin Douglass as Defendants who were not parties to the NDNY action.  The Plaintiff alleges that

Community Solutions is a corporation that exercises care and control over the Watkinson House halfway house in which Elaine Cohen is the director.  [Dkt. #1, compl., ¶5].   Plaintiff also named as Defendants in this action APA employees Kim Doe and Steve Doe.  *Id.*  To date, the Plaintiff has neither identified nor served Defendants Kim Doe or Steve Doe.

On February 8, 2012, the BOP Defendants moved to dismiss the complaint. [Dkt, #34].  On February 17, 2012, APA moved to dismiss the complaint.  [Dkt, #40].  On February 24, 2012, Defendant Elaine Cohen and Community Solutions moved to dismiss the complaint.  [Dkt. #44]  On March 8, 2012, Defendant Marvin Douglass also moved to dismiss the complaint. [Dkt. #48]. [3]

To date, Plaintiff has failed to oppose or object to any of the pending motions to dismiss.  Despite Plaintiff's failure to submit a memorandum in opposition to the four pending motions to dismiss, this Court is obligated "to consider the pleadings and determine whether they contain sufficient grounds for denying a motion to dismiss."  *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010); *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)(" although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the

---

[3] **Defendant Douglass also moved to dismiss the complaint on the basis that the complaint was never served upon him in accordance with Federal Rule of Civil Procedure 4(m).**

plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal.").

### Factual Allegations

The Plaintiff, as he did in the NDNY Action, asserts that his complaint is brought pursuant to 42 U.S.C. §1983.  However, whereas here, a Section 1983 action is brought against a federal official, a court should construe the claim as an action brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) in which the Supreme Court held that an individual may recover damages from a federal agent or employee acting under color of federal authority if that agent or employee violates the individual's constitutional rights.  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (finding it proper to construe a Section 1983 claim against a federal agency and its federal officers as a *Bivens* claim).  The Court therefore construes Plaintiff's allegations as brought pursuant to *Bivens*.

Plaintiff alleges the following facts, which for purposes of this motion the Court accepts as true. On or about January, 2008, he was "coerced into agreeing to participate and sign up for the "Halfway House Program."  [Dkt. #1, Compl., ¶7].  On April 20, 2008, Defendant Lucas advised him he would go to the halfway house in Connecticut on June 4, 2008 and that on May 17, 2008 he was told that he had to sign an "Agreement to Participate in Community Transition Programming" to be eligible for halfway house placement.  *Id.* at ¶¶8-9.  Plaintiff signed the agreement under "objection, duress, and coercion" as he did not have an alcohol or drug abuse problem.  *Id.* at ¶¶10-12.  Defendant Lucas told him that

7

it was a voluntary program and that he could choose not to participate.  *Id.* at ¶¶11-13.

On May 21, 2008, Defendant Lucas told  McCarroll that Defendant Schult would not accept the Agreement he signed under duress and that he signed another agreement "under UCC 1-207."  *Id.* at ¶13.   Defendant Lucas told McCarroll not to worry as it's a voluntary program.  *Id.*  McCarroll signed this agreement based upon "the false representation made by defendant Lucas."  *Id.*

McCarroll entered the Watkinson House on June 4, 2008 which was identified in a paper he received from Defendant Kindall as a mandatory drug abuse program, McCarroll was also told that he had to attend a scheduled interview for June 10, 2008 or else go back to prison.  *Id.* at ¶¶15.  McCarroll went to APA on June 10th and was told by Kim Doe to sign the sign-in sheet. McCarroll signed in "under objection, duress and threats of going back to prison."  *Id.* at ¶¶15-16.  McCarroll met with Defendant Douglass, a doctor at APA, who interrogated him about whether any of his staff put him under duress.  *Id.* at ¶¶17-29.  Defendant Douglass, with a "raging , psychotic look in his eyes" screamed at him and "act[ed] like an animal."  *Id.* at ¶¶30.  Defendant Douglass told him that "you're rude – jailhouse lawyer crackers like you who defend themselves and file lawsuits deserve to go back to prison."  *Id.* at ¶¶36.

When McCarroll returned to Watkinson House his case manager told him an Incident Report would be written.  On June 10, 2008 McCarroll was served with an Incident Report for a Prohibited Act Code violation 309, Violating a Condition of a Community Program."  *Id.* at ¶¶37-39.    Plaintiff was told that a UDC hearing

would be held on June 16, 2008.   On June 16, 2008 U.S Marshalls "who were there by a fax from defendant Crystal Kimball [sic] to put leg irons and chains on the Plaintiff and cart him off to jail." *Id.* at ¶¶43-45.   McCarroll  asserts that his Sixth Amendment rights "were violated in retaliation for being a pro se litigant and helping other prisoners with their legal work." *Id.* at p.19.

Plaintiff further asserts that the conduct of the Defendants, "having conspired to inappropriately enroll the Plaintiff in a drug treatment program so as to garner Federal money for such placement, is in fact an entrenched and longstanding scheme to defraud.  Finally, Plaintiff asserts that his "forced placement in such a program – absent any evidence of necessity or proprietary – was in clear retaliation for his exercise of First and Sixth Amendment rights." *Id.* at ¶50.

Plaintiff claims that the Defendants conspired and deprived him of his rights to "A) Freedom from cruel and unusual punishment; B) freedom from terror, humiliation and fear; C) Freedom from retaliation for exercising First and Sixth Amendment Rights; D)Freedom from intentional and/or negligent infliction of emotional distress and/or great emotional distress; E) Freedom from unusual search and seizure; F) Due process of law; G) Equal protection under the Law." *Id.* at ¶59.   Plaintiff further alleges that his rights are secured under Common law Uniform Commercial Code Section 1-207 and under "the Statutes and laws of the States of New York and Connecticut, and under any jurisdictional Statues or Laws related to fraud and/or breach of conduct, however titled, invoked under the pendent jurisdiction of this Court." *Id.* at ¶60.

**Legal Standard**

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Id.* In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir 2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either

in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), however, the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

<u>Analysis</u>

Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata* on the basis of his prior NDNY lawsuit.  "*Res judicata,* or claim preclusion, means that a party may not split causes of action that 'could be brought and resolved together.'" *Vandever v. Emmanuel*, 606 F.Supp.2d 253, 254 (D. Conn. 2009) (quoting *Nestor v. Pratt & Whitney,* 466 F.3d 65, 70 (2d Cir.2006)). "This doctrine means that once a case reaches a final judgment on the merits, the parties cannot later relitigate the issues that were raised or could have been raised in that earlier case." *Id. See also* S *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110-11 (2d Cir. 2000) (It is well-established that "a plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories (with different evidence 'necessary' to each suit)"). "Under the federal rules of *res judicata*, a subsequent lawsuit will be barred where the defendant can show: (1) an adjudication on the merits in the previous action; (2) that the previous lawsuit involved the plaintiffs, or those in privity with them; and (3) that the claims asserted in the subsequent suit were raised, or could have been raised, in the prior proceeding." *Greenwich Life Settlements,*

*Inc. v. ViaSource Funding Group, LLC*, 742 F.Supp.2d 446, 453 (S.D.N.Y. 2010) (citations omitted).

"Whether a claim that was not raised in the previous action could have been raised therein depends *in part* on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002) (internal quotation marks and citations omitted).   "To determine whether two actions arise from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (internal quotation marks and citation omitted).   "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line New York,* 295 F.3d 204, 205 (2d Cir.2002) (internal quotation marks omitted).   "As a result our cases consistently hold that the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit.  It is instead enough that 'the facts *essential to the second* were [already] present in the first.'" *Waldman*, 207 F.3d at 110-11 (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)).

Further, the doctrine of *res judicata* applies to *Bivens* claims. *See, e.g., Kapordelis v. Brant*, No.10-cv-4900 (NGG)(JMA), 2010 WL 5152387, at *2 (E.D.N.Y.

Dec. 13, 2010) (*holding* that Plaintiff's claim brought under *Bivens* was barred by the doctrines of *res judicata* and collateral estoppel); *Menillo v. U.S. Dept. of Justice Bureau of Prisons*, 411 F.Supp.2d 130, 131(D. Conn. 2006) (inmate was precluded by doctrine of *res judicata* from relitigating as a *Bivens* action challenges to the calculation of his prison term that was previously litigated in a state habeas corpus proceeding); *Hall v. Hodgkins*, 305 Fed. Appx. 224, 228-29 (5th Cir. 2008) (affirming judgment of district court dismissing *Bivens* claim as barred by *res judicata*).

The NDNY court's order granting Defendant Cohen's motion to dismiss and its order dismissing the action as to the BOP Defendants for failure to file a waiver statement constitute an adjudication on the merits.   *See Teltronics Servs. v. LM Ericsson Telecomm., Inc.*, 642 F.2d 31, 34-35 (2d Cir. 1981) (Rule 12(b)(6) judgments "are on the merits, with *res judicata* effects").

All of the claims asserted in the instant action were either raised, or could have been raised, in the NDNY Action.  Both suits arise out of the same facts and circumstances and the same evidence is needed to establish the claims in both suits.  Both actions stem from his allegedly coerced participation in a drug treatment program at the Watkinson Halfway House and Atlanta Psychological Associates which led to the issuance of an incident report, disciplinary proceedings, and Plaintiff's return to prison.  Indeed, the instant complaint contains numerous allegations which are identical to the allegations in the NDNY Action.  For instance, the facts alleged in Paragraphs 7 through 13 of the complaint in the current action are almost verbatim the same as the facts alleged

13

in paragraphs 7 through 15 of the NDNY complaint.  *See* [Dkt. #36, Ex. C, ¶¶7-15 and Dkt. #1, Compl., ¶¶7-13].

The only difference between the complaint filed in this action and the one filed in the NDNY Action is that the complaint filed in this action expounds upon the facts alleged in the complaint filed in the NDNY Action.  For example the complaint filed in the instant action provides more facts describing McCarrol's interaction with Defendant Douglass at the APA.  See [Dkt. #1, Compl., ¶¶17-37]. These "newly" added facts were known to and could have been included by McCarroll in the complaint he filed the NDNY Action.  Indeed, Plaintiff states in a footnote in the NDNY complaint that "Dr. Marvin Douglass and others are the subject of a different federal civils [sic] rights Complaint that the Plaintiff will be filing in Connecticut."  [Dkt. #36, Ex. C, footnote p. 5].  It appears that Plaintiff is indeed impermissibly attempting to "avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories."  *Waldman*, 207 F.3d at 110-11.  The underlying facts of Plaintiff's allegedly coerced participation in the drug treatment program are certainly related in time, space, origin and motivation and form a convenient trial unit.  Consequently, any "newly" added claims or allegations based upon different legal theories in the current action are barred because they arise from the same occurrence of Plaintiff's prior claims in the NDNY Action.

Further, Plaintiff conclusorily asserted the same broad array of constitutional violations in both his NDNY Action and the current action.  In Paragraph 71 of the NDNY complaint, Plaintiff asserts that the Defendants

14

conspired and deprived him of his rights to  "A) Freedom from cruel and unusual punishment; B) freedom from terror, humiliation and fear; C) Freedom from retaliation for exercising First and Sixth Amendment Rights [for helping other prisoners]; D)Freedom from intentional and/or negligent infliction of emotional distress and/or great emotional distress; E) Freedom from fraudulent use of taxpayer  dollars; F) Freedom from negligence in the performance of police duty; G) Due Process of law; H) Equal protection of the Laws."  [Dkt. #36, Ex. C, ¶71]. In the instant action, Plaintiff included an almost identical paragraph except that he did not re-allege that he was deprived of his rights to "Freedom from fraudulent use of taxpayer  dollars" and "Freedom from negligence in the performance of police duty."  [Dkt. #1, Compl., ¶60].  Instead, Plaintiff added that he was also deprived of his right to "Freedom from unusual search and seizure." *Id.*  Plaintiff has therefore advanced many of the same legal theories in the current action as were advanced in the NDNY Action.  Consequently, Defendants have shown that the claims asserted in the current action were either raised or could have been raised in the NDNY Action and that the NDNY Action was an adjudication on the merits.

Lastly, the NDNY Action involved the same Plaintiff, the same Defendants or those in privity with them as the current action.  "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56

F.3d 359, 367-68 (2d Cir.1995); *see also Lacy v. Principi*, 317 F.Supp.2d 444, 447 (S.D.N.Y. 2004) ("When a party has litigated a claim to final judgment, that party cannot avoid the *res judicata* effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant."); *Cameron v. Church*, 253 F.Supp.2d 611, 623 (S.D.N.Y. 2003) (*"Res judicata* operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously-dismissed claims.").

"[O]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977). "The privity requirement exists to ensure that the interests of the party against whom collateral estoppel [or *res judicata*] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding.... A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity...." *Tibetts v. Stempel*, 354 F.Supp.2d 137, 148 (D. Conn. 2005) (internal quotation marks and citation omitted). "[T]he concept of privity has moved away from the conventional and narrowly defined meaning of mutual or successive relationships to the same rights or property.  It now signifies a relationship between one who is a party of record and another who is a nonparty, but is sufficiently close to mandate the application of *res judicata* or collateral

estoppel." *Id.* (internal quotation marks and citation omitted); *see also Alaimo v. General Motors Corp.*, No.07-cv-7624(KMK)(MDF), 2008 WL 4695026, at *5 (S.D.N.Y. Oct. 20, 2008) ("Though privity has traditionally been narrowly defined, the modern conception of privity is applicable in the *res judicata* context where, as here, a new defendant has a sufficiently close relationship to the original defendant to justify preclusion.") (internal quotation marks and citation omitted).

Here, the "newly" added BOP defendants Barbara Darrah, Matthew Ellis and Judy Nichols are ineluctably in privity with the BOP and their co-employees Crystal Kindall, Deborah Schult and Steven Lucas who were Defendants in the NDNY Action. Courts have long recognized that privity exists between co-employees or employees and their employers for *res judicata* purposes. *See, e.g., Barclay v. Lowe*, 131 Fed. App. 778, 779 (2d Cir. 2005) (finding privity existed where prisoner's second suit named different prison guards as defendants. "Although [the plaintiff] named different defendants in the second suit than in the first, the suits are nonetheless duplicative because the defendants in the second suit are in privity with the defendants in the first suit. All defendants are employees of Attica and their interests are adequately represented by those in the first suit who are 'vested with the authority of representation.' "); *Watson v. Mayo*, No.07Civ.54(NRB), 2008 WL 538442, at *8 (S.D.N.Y. Feb. 26, 2008) ("Courts have routinely found privity between co-employees sued in separate suits over allegedly tortious acts that occurred during the course of their employment."); *Amadsau v. Bronx Lebanon Hosp. Ctr.,* 03 Civ. 6450(LAK)(AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) (finding employees and employer-defendant in prior

litigation with same plaintiff to have "sufficiently close relationship" to be in privity for *res judicata* purposes); *Marshall v. Nat'l Ass'n of Letter Carriers BR36,* 03 Civ. 1361LTSAJP, 2003 WL 22519869, at *9 (S.D.N.Y. Nov.7, 2003) (holding National Labor Relations Board, Equal Employment Opportunity Commission, and employees of these agencies to be in privity with United States Postal Service and letter carriers union); *Alaimo*, 2008 WL 4695026, at *5 (holding that plaintiff could not avoid the bar of *res judicata* by adding a General Motors employee as a new defendant in the current action where General Motors was a defendant in the prior state action); *Tibbetts,* 354 F.Supp.2d at 148 ("Generally, an employer-employee or agent-principle relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued.") (quotation marks omitted).  For these same reasons, privity exists between Defendant Community Solutions and its employee, the Defendant Cohen. As Defendant Cohen was named as a defendant in the NDNY Action which action was based on facts identical to those on which this case is based, the claims against its employer Community Solutions are barred by the doctrine of *res judicata*.

Lastly, the Court finds that Defendant Douglass and the APA are in privity with the BOP and Defendant Cohen as they had a sufficiently close relationship to the BOP and Defendant Cohen to justify preclusion.   Plaintiff alleges that both Community Solutions (Defendant Cohen's employer) and APA[4] are contracted by

---

[4] **The Court further notes that under Supreme Court precedent Plaintiff cannot maintain a *Bivens* action against either Community Solutions or APA.  *See Corrections Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (holding that *Bivens***

the BOP to provide services to prisoners on behalf of the BOP.  See [Dkt. #1, Compl., ¶1].  It has been long recognized that the BOP relies on "contracts with private institutions and state and local governments for the operation of halfway house facilities to help federal prisoners reintegrate into society."  *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 64 n.1 (2001).  Both Community Solutions and APA provided drug treatment and/or halfway house services to McCarroll under contract with or at the behest of the BOP and therefore are agents of and in privity of contract with the BOP such that their interests, which arose out of the same facts and circumstances, rely upon the same evidence and assert the same claims as those litigated in the NDNY Action, had the same interests as and were adequately represented by the BOP in the NDNY Action.  See, e.g., *John St. Leasehold, LLC v. Capital Mgmt. Res., L.P.,* 154 F.Supp.2d 527, 542 (S.D.N.Y.2001) ("Most courts of appeals have held that an agency relationship is sufficient to establish privity for the purposes of *res judicata* .... Finding privity in an agency relationship is consistent with the teaching of the Court of Appeals for the Second Circuit that privity is to be applied flexibly and is to be found where the new defendants have a sufficiently close relationship with the defendants in the first action." (citations and quotation marks omitted) (collecting cases)); *Amadasu*, 2005 WL 121746, at *8 (finding that employees and institute "closely affiliated with" hospital that was a defendant in prior litigation with same plaintiff to have a "sufficiently close relationship" to be considered in privity with one

---

action may not be brought against private corporations, such as a private operator of a halfway house under contract with the BOP, even when such private corporation acts under color of federal law).

another); *Adams v. California Dep't. of Health Services,* 487 F.3d 684, 691-92 (9th Cir.2007) (holding that co-employees of a state agency as well as independent contractors hired by the state agency were in privity with the state agency itself and various other individual defendants who had been sued in a prior action by virtue of the fact that all of the defendants possessed an "identity of interest"). Here there was an identity of interest by virtue of the close working and collaborative relationship between the BOP, Community Solutions, and APA and their employees in providing services to the prisoners under BOP control.  This identity of interest and close relationship is reflected in the fact that Defendant Douglass and APA's alleged conduct was essential to the claims brought against the BOP and Cohen in the NDNY Action as the "PAC violation 309" was based on Defendant Douglass's report that Plaintiff refused to participate in drug abuse counseling.   Consequently, Defendant Douglass, APA, and APA employees Steve and Kim Doe[5] are in privity with the BOP and Defendant Cohen.  Here, Plaintiff's attempt to name a different configuration of Defendants does not entitle him to revive previously-dismissed claims or raise claims that could have been asserted in the prior action.

In sum, the Defendants have shown there was a prior adjudication on the merits of the claims arising out of the facts and circumstances which gave rise to the instant suit, that privity existed between the parties to the NDNY Action and the parties to the instant action, and that the claims asserted in the instant action

---

[5] The Court notes that *res judicata* would also apply to bar any claims made against Defendants Kim Doe and Steve Doe in the event that Plaintiff identified and effected service on those Defendants.

were raised, or could have been raised, in the NDNY Action.  Consequently *res judicata* bars all of Plaintiff's claims in the current action.  The Defendants have made several other alternative arguments as to why this action should also be dismissed.  However, the Court need not address those arguments in light of its conclusion that *res judicata* applies.

## Conclusion

For the foregoing reasons, the Defendants' motions to dismiss [Dkt.##34,40,44,48]  are GRANTED.  The Court dismisses the Plaintiff's complaint in its entirety against all Defendants. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

_____/s/_____

**Hon. Vanessa L. Bryant**

**United States District Judge**

Dated at Hartford, Connecticut: September 10, 2012